# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **AJIT TOLANI, et al.,** | **CASE NO. 1:19-CV-02388** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **MEDICAL MUTUAL OF OHIO,** | |
| **Defendant.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Motion to Remand of Plaintiffs Ajit Tolani ("Mr. Tolani"), Shruti Tolani, and their minor daughter (collectively, "Plaintiffs"). (Doc. No. 9.) Defendant Medical Mutual of Ohio ("MMO") filed a brief in opposition on December 4, 2019, to which Plaintiffs replied on December 11, 2019. (Doc. Nos. 15, 16.) For the following reasons, Plaintiffs' Motion to Remand (Doc. No. 9) is GRANTED IN PART and DENIED IN PART.

## I. Background

### a. Factual Background

According to Plaintiffs' Complaint, Mr. Tolani is an internationally-respected attorney that specializes in transfer pricing and international tax issues. (Doc. No. 1-1 at ¶ 7.) Plaintiffs allege Mr. Tolani worked for KPMG in New York from 2005 to 2008, but that he and his family relocated to India at KPMG's request in 2008. (*Id.* at ¶¶ 8-9.) Plaintiffs contend, however, that they always desired to move back to the United State permanently. (*Id.* at ¶ 12.)

Plaintiffs assert that, in 2015, Mr. Tolani was diagnosed with interstitial lung disease, a debilitating condition that can cause permanent scarring of the lungs, making it difficult to breathe. (*Id.* at ¶ 14.) Plaintiffs further aver that, in April 2016, Mr. Tolani met with Dr. Atul Mehta from the

Cleveland Clinic, who informed Mr. Tolani that he likely needed a lung transplant.  (*Id.* at ¶¶ 15-17.)
Plaintiffs state that Mr. Tolani's deteriorating medical condition accelerated the timing of Plaintiffs'
decision to make a permanent move back to the United States, and, that same month, Plaintiffs
decided to take all necessary steps to move back.  (*Id.* at ¶¶ 18-19.)

Plaintiffs allege that, in December 2016, they moved to Cleveland, Ohio and applied for health
insurance through the federally facilitated marketplace established by the Patient Protection and
Affordable Care Act ("ACA").  (*Id.* at ¶¶ 20-21.)  Plaintiffs claim that they purchased a Qualified
Health Plan ("QHP") from MMO and received medical care under the policy in February 2017, but
that MMO rescinded the policy after Plaintiffs submitted a pre-authorization request for Mr. Tolani's
lung transplant procedure.  (*Id.* at ¶¶ 25-30.)  According to Plaintiffs, MMO rescinded the policy
because it found that Plaintiffs were not eligible to purchase a QHP pursuant to regulations under the
ACA.  (*Id.* at ¶¶ 37-38.)  Specifically, MMO determined that Plaintiffs did not meet the residency
requirements enumerated in 45 C.F.R. § 155.305, as MMO claimed Plaintiffs were only in their
service area to obtain medical care, would leave after that care was completed, and therefore did not
intend to reside in the area as required by the regulation.  (*Id.* at ¶¶ 37-39.)  Plaintiffs appealed the
termination of their policy, but MMO reaffirmed its decision.  (*Id.* at ¶¶ 41-44.)

Plaintiffs contend MMO's decision was improper because Plaintiffs intended to reside in Ohio
not just for the medical procedures that Mr. Tolani required, but thereafter.  (*Id.* at ¶¶ 43-48.)  As a
result of MMO's actions, Plaintiff claim they were forced to pay hundreds of thousands of dollars out
of pocket for Mr. Tolani's lung transplant procedure.  (*Id.* at ¶ 35.)

### b.  Procedural History

On August 1, 2019, Plaintiffs filed suit against MMO in the Court of Common of Cuyahoga County Ohio, setting forth claims for breach of contract, bad faith, negligence, and punitive and exemplary damages based on MMO's allegedly improper decision to terminate their health insurance policy.  (Doc. No. 1-1.)  MMO subsequently removed the action to this Court, asserting that federal jurisdiction exists because although Plaintiffs' claims are styled as state-law claims, resolution of the action depends on the interpretation, construction, and effect of federal law—i.e., the ACA regulations establishing the eligibility requirements at issue.  (Doc. No. 1.)

On October 16, 2019, MMO then filed a Motion to Dismiss Plaintiffs' claims.  (Doc. No. 6.) Shortly thereafter, Plaintiffs filed a Motion to Remand the case to state court.  (Doc. No. 9.)  Plaintiffs also requested that the Court stay briefing on MMO's Motion to Dismiss pending resolution of Plaintiffs' Motion to Remand.  (Doc. No. 11.)  The Court granted Plaintiffs' request after MMO did not object to it.  (Doc. Nos. 12, 13.)  As such, briefing continued only with respect to Plaintiffs' Motion to Remand, and MMO filed a brief in opposition to Plaintiffs' Motion on December 4, 2019, to which Plaintiffs responded on December 11, 2019.  (Doc. Nos. 15, 16.)

## II.  Standard of Review

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  In addition, "[a]s a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction."  *Petrofski v. Chrysler LLC*, No. 5:07CV3619, 2008 WL 5725581, at *2 (N.D. Ohio Jan. 17, 2008).  Accordingly, "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  The party seeking

3

removal also bears the burden of showing that federal jurisdiction exists.  *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000).  A court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

## III.    Analysis

### a.  Federal Subject-Matter Jurisdiction

In their Motion to Remand, Plaintiffs contend that no federal jurisdiction exists because they assert only state-law claims and are not seeking a recovery under the ACA.  (Doc. No. 9.)  In response, MMO contends that the resolution of Plaintiffs' claims depends on the application of federal regulations under the ACA, such that Plaintiffs' claims raise a substantial federal question sufficient to establish federal subject-matter jurisdiction.  (Doc. No. 15.)  The Court concludes that Plaintiffs' claims do not raise a substantial federal question and thus, will remand the matter to state court.

"In the absence of diversity, a defendant may remove a civil action from state court to federal court only if the *plaintiff's* allegations establish 'original jurisdiction founded on a claim or right arising under' federal law."  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (quoting 28 U.S.C. § 1441(b)).  "Whether a cause of action arises under federal law must be apparent from the face of the 'well-pleaded complaint.'"  *Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  Accordingly, "for purposes of assessing whether federal-question jurisdiction exists, federal courts ignore any potential federal defenses that may arise in the course of the litigation."  *Id.*

A claim arises under federal law "when the cause of action is (1) created by a federal statute or (2) presents a substantial question of federal law."  *Id.* at 991.  MMO does not contend that federal

4

law creates any of Plaintiffs' causes of action.  Thus, the Court need only assess whether Plaintiffs' claims present a substantial question of federal law.

Jurisdiction based on the presence of a substantial question of federal law "remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski*, 501 F.3d at 565; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[E]ven where a claim finds its origins in state rather than federal law . . .we have identified a 'special and small category' of cases in which arising under jurisdiction still lies.") (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).  "The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction." *Mikulski*, 501 F.3d at 565.  Instead, substantial federal questions "typically require 'the interpretation of a federal statute' that is so significant that a federal court should hear the case." *Miller*, 949 F.3d at 992 (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir. 2006)).

Ultimately, the Supreme Court has held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).  Thus, in order for the Court to appropriately exercise jurisdiction over this action, each of these requirements must be satisfied.

5

### i.  Necessarily Raised and Actually Disputed

MMO asserts that the first and second requirements—that a federal issue be necessarily raised and actually disputed—are satisfied because ACA regulations regarding eligibility requirements to purchase a QHP control whether MMO acted properly when it rescinded Plaintiffs' policy, and the parties disagree over whether Plaintiffs met these eligibility requirements.  (Doc. No. 15 at 4-5.)  Plaintiffs do not appear to dispute MMO's arguments in this regard, and the Court agrees with MMO.

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim."  *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (quoting *Grable*, 545 U.S. at 315); *see also Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 463 (6th Cir. 2010) ("Charvat's claim depends on the interpretation of federal law, because it turns on a violation of a federal statute.").  To be disputed, the parties must "cross swords over" the issue "such that two competing interpretations are asserted."  *Funderwhite v. Local 55, United Ass'n*, 702 F. App'x 308, 313 (6th Cir. 2017) (quoting *Mikulski*, 501 F.3d at 569).

Here, in their Complaint, Plaintiffs acknowledge that "[i]n order to qualify for health insurance through the Marketplace, individuals must meet certain eligibility and residency requirements pursuant to 45 CFR 155.305."  (Doc. No. 1-1 at ¶ 22.)  This regulation provides, in relevant part, the following:

> For an individual who is age 21 and over, is not living in an institution as defined in 42 CFR 435.403(b), is capable of indicating intent, and is not receiving an optional State supplementary payment as addressed in 42 CFR 435.403(f), the service area of the Exchange of the individual is the service areas of the Exchange in which he or she is living and—
>
> (A) Intends to reside, including without a fixed address; or
>
> (B) Has entered with a job commitment or is seeking employment (whether or not currently employed).

6

45 C.F.R. § 155.305(a)(3)(i).

Plaintiffs allege MMO's termination of their policy based on the fact that Plaintiffs did not meet the "intends to reside" requirement was improper because Plaintiffs did intend to reside in Ohio. (Doc. No. 1-1 at ¶¶ 43-48.)  Each of Plaintiffs' causes of action are based on the allegation that MMO failed to follow federal law when it determined that they were ineligible for the QHP they purchased. Specifically, in support of their breach of contract and bad faith claims, Plaintiffs assert that MMO "fail[ed] to follow the requirements under the federal regulations in 45 CFR 155.305 and 45 CFR 147.128."  (*Id.* at ¶ 61.)  Similarly, in support of their negligence claim, Plaintiffs allege that MMO "breached its duty when it failed to adhere to and follow federal law, including but not limited to the Affordable Care Act, 45 CFR 147.128, 45 CFR 155.305."  (*Id.* at ¶ 69.)  Consequently, whether MMO properly adhered to federal law when it terminated Plaintiffs' policy is an essential element of Plaintiffs' claims, and Plaintiffs' Complaint necessarily raises an issue of federal law.

Additionally, MMO disputes Plaintiffs' allegations and contends that it properly determined that Plaintiffs did not meet the eligibility requirements under 45 C.F.R. § 155.305 when it rescinded their policy.  As such, the parties disagree with respect to the proper interpretation and application of the federal regulation at issue.  Therefore, the federal issue is also actually disputed.

### ii.  Substantial

MMO contends that the federal issue raised by Plaintiffs' Complaint is substantial, while Plaintiffs asserts the case is fact-bound and does not implicate a substantial federal interest.  (Doc. No. 15 at 6-9; Doc. No. 16 at 2-3.)  The Court agrees with Plaintiffs that there is no substantial federal interest at issue.

"To raise a substantial question of federal law, the federal issue must not only be contested but also substantial, 'indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'"  *Miller*, 949 F.3d at 993 (quoting *Grable*, 545 U.S. at 313).  "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit."  *Gunn*, 568 U.S. at 260.  Instead, courts must look "to the importance of the issue to the federal system as a whole."  *Id.*

In the Sixth Circuit, in assessing whether a federal question of law is substantial, courts consider "(1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)."  *Mikulski*, 501 F.3d at 570.  "[N]o single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case."  *Id.*

With respect to the first factor, this case does not involve a federal agency, which weighs against characterizing the federal interest as substantial.  *See, e.g.*, *Empire*, 547 U.S. at 700 ("Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court."); *Miller*, 949 F.3d at 993 ("Today's case lacks many of these same federal indicia.  There is no federal agency present in this dispute."); *Mikulski*, 501 F.3d at 570 ("The first factor is both objective and apparent, and in this case it weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute.").

8

MMO contends that although no federal agency is a party to this litigation, this factor should nonetheless favor a finding of jurisdiction because Plaintiffs challenge the Center for Medicare & Medicaid Services' ("CMS") interpretation of 45 C.F.R. § 155.305.  (Doc. No. 15 at 6-8.)  With regard to the "intends to reside" requirement in 45 C.F.R. § 155.305(a)(3)(i)(A), CMS has issued the following guidance:

> For the purposes of § 155.305(a),"intends to reside" means that an applicant has a present intent to reside where he or she is living, and intends to remain in the Exchange service area where he or she is seeking coverage.

> Individuals visiting an Exchange service area for a transitory purpose, for example, to attend to a business matter, *obtain medical care*, or for personal pleasure, do not have a present intent to reside, and do not meet the residency requirement for Marketplace coverage for the Marketplace service area they are visiting.

*FAQs on the Marketplace Residency Requirement and the Special Enrollment Period due to a Permanent Move*, Centers for Medicare & Medicaid Services (Jan. 19, 2016) (emphasis added). MMO asserts that Plaintiffs are challenging this interpretation by arguing that their decision to travel to a QHP service area for the purpose of obtaining medical care is not relevant to whether they can establish an intent to reside.  (Doc. No. 15 at 7.)  However, Plaintiffs do not appear to have made this argument.  Instead, Plaintiffs assert they had the requisite intent under CMS's guidance because they did not move to Ohio for the transitory purpose of obtaining medical care, but to reside in Ohio permanently even after any medical care was completed.  (Doc. No. 16 at 2.)  Thus, Plaintiffs do not challenge CMS's interpretation of the regulation as invalid or otherwise inappropriate, and a federal agency's compliance with a statute is not in dispute.

The second factor requires courts to "decide whether the question to be resolved is important." *Mikulski*, 501 F.3d at 570.  In deciding the importance or substantiality of a federal issue, courts often consider whether the case presents a purely legal issue or is fact-bound and situation specific.  For

example, in *Grable*, the sole issue was whether the IRS was required to provide personal service, rather than service by certified mail, under a federal tax provision requiring notice prior to a seizure. 545 U.S. at 310-11.  The Supreme Court held that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."  *Id.* at 315.  In contrast, in *Empire*, a health plan administrator sought to sue in federal court to obtain reimbursement of the amount it had paid for a beneficiary's medical care after the beneficiary obtained a settlement in a state court personal injury suit.  547 U.S. at 687-88.  The Supreme Court found the case did not present a substantial question of federal law, specifically distinguishing *Grable*:

> *Grable* presented a nearly "pure issue of law," one "that could be settled once and for all and thereafter would govern numerous tax sale cases."  Hart and Wechsler 65 (2005 Supp.).  In contrast, Empire's reimbursement claim, McVeigh's counsel represented without contradiction, is fact-bound and situation-specific.  McVeigh contends that there were overcharges or duplicative charges by care providers, and seeks to determine whether particular services were properly attributed to the injuries caused by the 1997 accident and not rendered for a reason unrelated to the accident.

*Id.* at 700-01; *see also Gunn*, 568 U.S. at 263 ("Such 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction.") (quoting *Empire*, 547 U.S. at 701).

Also relevant to the importance of a federal issue is whether the question "implicate[s] any broader or more substantial issue."  *Mikulski*, 501 F.3d at 571.  For instance, in *Mikulski*, the Sixth Circuit held that the "interpretation of the effective date of an accounting provision that instructs companies on how to adjust their earnings and profits calculations to account for certain construction project interest expenses" was too specific to implicate any broader or more substantial issues.  *Id.* On the other hand, the Second Circuit concluded that "whether NASDAQ violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO . . . is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of

importance to 'the federal system as a whole.'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

In this case, MMO contends that the residency requirements to purchase a QHP from a federally facilitated exchange are designed to ensure the proper functioning of the ACA's marketplace system, as they prevent medical tourism and allow insurers, such as MMO, to price their plans based on the relevant demographic and cost elements for their particular service area. (Doc. No. 15 at 7-8.) MMO also asserts resolution of the case depends on a purely legal question regarding whether a person who relocates for purposes of obtaining medical treatment has an intent to reside in the service area. (*Id.* at 8-9.) In response, Plaintiffs argue that this case does not involve a purely legal issue, but instead presents unique factual issues regarding Plaintiffs' intent that do not implicate regulation of the federal marketplace for ACA plans as a whole. (Doc. No. 16 at 2-3.)

While the Court agrees with MMO that the residency requirements in general may implicate a broader federal interest in the operation of the federal marketplace, the Court finds that the dispute is too fact-bound for the federal question presented to confer jurisdiction. Unlike the purely legal interpretation of a federal statute at issue in *Grable*, this case presents conflicting factual contentions regarding Plaintiffs' intent when they moved to Ohio. MMO asserts that Plaintiffs traveled to Ohio specifically for the purpose of obtaining medical care for Mr. Tolani (*see, e.g.*, Doc. No. 15 at 7), while Plaintiffs claim their decision to move back to the United States predated Mr. Tolani's decision to receive medical care from the Cleveland Clinic and that Plaintiffs never intended to move away from Ohio after Mr. Tolani's procedure (Doc. No. 1-1 at ¶ 43; Doc. No. 16 at 2). Thus, to the extent Plaintiffs' Complaint raises a federal issue regarding the interpretation and application of 45 C.F.R.

11

§ 155.305, it does not do so for a broad range of parties.  Instead, the inquiry would be "fact-bound and situation-specific," which weighs against a finding of substantiality.  *Empire*, 547 U.S. at 701.

The parties' factual disputes also distinguish the present case from *Morris v. Blue Shield of California*, No. LA CV16–05914, 2017 WL 1653938 (C.D. Cal. May 1, 2017), which MMO relies on in support of its substantiality argument.  (Doc. No. 15 at 7-8.)  In *Morris*, the parties disputed the proper classification of certain payments made by an insurer, which affected the size of rebates the insurer was required to provide to its insureds under the ACA.  2017 WL 1653938, at *1-2.  Thus, the federal issue in *Morris* involved the purely legal interpretation of certain provisions of the ACA. *See id.* at *4-5.  In contrast to *Morris*, the Court finds the current case more closely resembles cases involving the ACA that presented issues of both law and fact in which no substantial federal interest was present.  *See, e.g.*, *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Virginia, Inc.*, 111 F. Supp. 3d 731, 738 (E.D. Va. 2015) ("At this initial stage of the proceedings, the federal issue appears to present issues of law and issues of fact.  Although the definition of 'discrimination' under § 2706 of the ACA is a contested issue, so too are the rates the Defendant charged other providers, as well as the criteria actually used by the Defendant for establishing such rates.").

Next, with respect to the third factor—whether a decision on the federal question will resolve the case—the Court finds that resolution of the question of whether MMO properly rescinded Plaintiffs' coverage may, but will not necessarily, conclude the action.  If MMO prevails on this point, it will likely be dispositive because Plaintiffs' claims are premised on MMO having violated ACA's regulations when it rescinded their policy.  On the other hand, if the Court finds that MMO did wrongfully rescind Plaintiffs' policy, Plaintiffs will not necessarily be entitled to judgment.  Plaintiffs still will be required to prove additional elements with respect to their breach of contract, bad faith,

and negligence claims.  For example, under Ohio law, which the Court would be required to apply to each of Plaintiffs' claims, Plaintiffs would still have to establish the existence of a contract, their performance under the contract, and damages to succeed on their breach of contract claim.  *See Second Calvary Church of God in Christ v. Chomet*, No. 07CA009186, 2008 WL 834434, at *2 (Ohio Ct. App. 9th Dist. Mar. 31, 2008).  In addition, MMO has already moved to dismiss Plaintiffs' bad faith and negligence claims for reasons independent of the Court's eventual determination as to the correctness of MMO's termination of Plaintiffs' policy.  (*See* Doc. No. 6-1 at 8-13.)  Specifically, with respect to Plaintiffs' bad faith claim, MMO asserts that under Ohio law, Plaintiffs would need to show not only that MMO's termination was wrongful, but that MMO had no "reasonable justification" for its determination that Plaintiffs did not meet the applicable eligibility requirements. (*Id.* at 8.)  Again relying on Ohio law, MMO also asserts Plaintiffs' negligence claim fails as a matter of law because negligence claims may not be based on a breach of contract, and Plaintiffs' have failed to allege any duty owed to them by MMO beyond the regulatory eligibility requirements.  (*Id.* at 11-13.)

Finally, for the fourth factor, courts consider whether a decision as to the federal question will control numerous other cases.  *Mikulski*, 501 F.3d at 570.  As the Court discussed with regard to the second factor, the case is factually specific and a decision in these circumstances likely will not be controlling over numerous other cases.  Moreover, MMO has admitted that the federal question presented is a narrow issue and that MMO could locate no other cases in which the relevant regulation has been interpreted.  (Doc. No. 15 at 9-10.)  As such, this factor also weighs against concluding that the federal interest in this case is substantial.

Taking all four factors into account, the Court finds that they generally weigh against a finding of substantiality.  Critically, this case centers around a factual dispute between Plaintiffs and MMO regarding Plaintiffs' intent when they moved to Ohio.  This factual inquiry—not the Court's interpretation of any federal law or regulation—will be dispositive.  And even to the extent any legal interpretation would be required, it would not resolve any substantial or important questions, as it would be relevant only to the highly specific context of this case, and "state courts are generally presumed competent to interpret and apply federal law."  *Mikulski*, 501 F.3d at 560 (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967)).  Accordingly, the Court concludes the federal interest present in this case is not substantial.  As a result, MMO has failed to establish that all of the requirements necessary to a finding of federal jurisdiction on the basis of a substantial federal question have been satisfied.[1]  Because federal-subject matter jurisdiction is lacking, the Court will remand the case to state court.

### b.  Award of Costs and Expenses

In addition to an order of remand, Plaintiffs request an order awarding them just costs and actual expenses, including reasonable attorneys' fees, incurred as a result of the removal.  (Doc. No. 9.)  In response, MMO argues that Plaintiffs are not entitled to such costs and fees regardless of whether the case is remanded to state court because MMO set forth an objectively reasonable basis for removal.  (Doc. No. 15 at 12.)  Although remand is appropriate, the Court declines to exercise its discretion to award costs and expense incurred as a result of the removal.

---

[1] Accordingly, the Court need not assess the last requirement related to the potential disturbance of the established federal-state court balance.

14

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.*  In other words, "an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least *some* finding of fault with the defendant's decision to remove." *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1059-60 (6th Cir. 2008) (quoting *Bartholomew v. Town of Collierville*, 409 F.3d 684, 686 (6th Cir.2005)).

Here, MMO had an objectively reasonable basis for seeking removal, as Plaintiffs' Complaint did raise an issue of federal law regarding the application of federal regulations under the ACA.  The Court found that the issue was not substantial enough to warrant federal subject-matter jurisdiction, but MMO's argument in support of substantiality was not objectively unreasonable.  Accordingly, Plaintiffs' request for an award of costs and expenses is denied.

**IV.  Conclusion**

For the reasons set forth above, Plaintiffs' Motion to Remand (Doc. No. 9) is GRANTED IN PART and DENIED IN PART.  The Motion to Remand is GRANTED as to Plaintiffs' request that this action be remanded to state court, but DENIED as to Plaintiffs' request for an award of costs and expenses incurred as a result of removal.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_

PAMELA A. BARKER

Date:  April 22, 2020                    U. S. DISTRICT JUDGE

16